IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY L. HART, | Case No. 1:22-cv-00162 |
| Petitioner, | JUDGE CHARLES ESQUE FLEMING |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| RONALD ERDOS, WARDEN, | |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Anthony Hart, an Ohio prisoner serving a 27-year aggregate prison sentence for aggravated robbery, robbery, carrying a concealed weapon, and having weapons while under disability, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Doc. 1. Hart, proceeding *pro se*, asserts a single ground for relief: the trial court's failure to merge the allied offenses of aggravated robbery and robbery for purposes of sentencing constituted a Double Jeopardy violation. *See id.* at 5.

For the reasons that follow, I recommend that Hart's petition for a writ of habeas corpus under 28 U.S.C. § 2254 be DISMISSED as untimely. I further recommend that Hart not be granted a certificate of appealability.

I.      **State Court History**

    A.      **Trial Court Proceedings**

In December 2019, a Richland County, Ohio, grand jury issued an indictment that charged Hart with: one count of aggravated robbery in violation of Ohio Rev. Code § 2911.11(A)(1) (Count 1); one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(1)

(Count 2); two counts of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A)(2) (Counts 3 and 4); and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2) (Count 5). ECF Doc. 8-1 at 3-5. Counts 1 and 2 carried firearm specifications pursuant to Ohio Rev. Code § 2941.145. *Id.* at 3. After a not guilty plea, the case proceeded to jury trial. *See* ECF Doc. 8-1 at 6.

The following facts were subsequently established by the trial evidence, as described by the Ohio Court of Appeals:

> {¶3} At the trial, Kara Ward testified that she had been employed at the Circle K convenience store on Lexington Avenue in Richland County and was working on October 31, 2016. She testified that she was cleaning the store a little after 9:00 p.m. and another woman named Tammie Marshall was running the register when a man with a hood came inside. They asked him to remove his hood because it was protocol and the man complied. Ward testified that when she looked up, she saw the man had his gun pulled on Tammie and said "Don't call anybody. The gun is cocked." Trial Transcript at 60. The man took all of the available money which was $150.00 in cash. A surveillance video of the incident, which was taken from the store, was played at trial. Ward identified [Hart] at trial as the man from the video. She testified that she saw [Hart's] face during the incident and that the gun was never pointed at her.
>
> {¶4} Tammie Marshall testified that she was working the 2:00 to 10:00 p.m. shift on October 31, 2016 and that [Hart] approached the counter where she was standing and asked for cigarettes. When she turned around to ask [Hart] what kind of cigarettes he wanted, he had a gun in his right hand and demanded money. [Hart] told her that the gun was cocked and to not try anything. Marshall testified that she was not going to find out if the gun was loaded. She testified that approximately $40.00 was in her register drawer. Marshall testified that [Hart] was a few feet away from her and that she could see him. After [Hart] left, Kara Ward rushed to the front door and locked it.
>
> {¶5} The surveillance footage of the robbery was circulated among local law enforcement and one of them was able to identify [Hart]. Both Marshall and Ward picked [Hart] out of photo lineups.

*Id.* at 68-69.

The jury found Hart not guilty on Count 3 and the trial court entered a judgment of acquittal on that count. *Id.* at 6. The jury found Hart guilty on all other counts (Counts 1, 2, 4, and 5) and the firearm specifications on Counts 1 and 2. *Id.* at 7, 69. During the sentencing

hearing, Hart's counsel argued that the aggravated robbery and robbery counts (Counts 1 and 2), and their corresponding firearm specifications, should be merged together for purposes of sentencing because there was only one victim (the Circle K convenience store) and one animus. *Id.* at 74, 112-14. The court found that there were multiple victims, stating:

> [Hart] specifically took cash from each cashier. He took it from the hand of Miss Ward and he took it from the hand of Miss Marshall. You know, had there only been one clerk, I think you've got one charge. There's two clerks, and he brandished the gun and tells them both, Give me all the money, give me all the money, give me more money. There's clearly two victims in this case, and this was multiple offenses. It wasn't one crime. It was actually four crimes committed.

*Id.* at 127.

On August 26, 2019, the court sentenced Hart to an aggregate prison sentence of 27 years, consisting of: (i) a 10-year term on Count 1 (aggravated robbery); (ii) an 8-year term on Count 2 (robbery); (iii) an 18-month term on Count 4 (carrying a concealed weapon); and (iv) a 36-month term on Count 5 (having weapons while under disability). *Id.* at 7. Counts 1, 2, and 5 were ordered to be served consecutively to each other but concurrently with Count 4. *Id.* at 8. The court further sentenced Hart to an additional 6-year prison term for the firearm specifications attached to Counts 1 and 2, to be served consecutive to the above aggregate prison term. *Id.*

**B.  Direct Appeal**

On September 3, 2019, Hart appealed to the Ohio Court of Appeals. *Id.* at 10. Hart asserted three assignments of error: (i) the trial court erred when it admitted certain evidence in violation of the self-incrimination clause of the Fifth and Fourteenth Amendments; (ii) the trial court erred in failing to merge the allied offenses of aggravated robbery and robbery in violation of the Double Jeopardy, Due Process, and Equal Protection Clauses of the United States and Ohio Constitutions; and (iii) the trial court erred in sentencing Hart to maximum consecutive sentences in violation of Ohio sentencing law. *Id.* at 15. Relevant to the instant petition, Hart argued that the court's failure to merge his aggravated robbery and robbery convictions for the

3

purposes of sentencing violated the Double Jeopardy Clause of the Fifth Amendment because those counts were committed against one victim (the Circle K Company), at the same time, and with a single animus. *Id.* at 25-29. He argued that the two Circle K employees (Ward and Williams) did not qualify as "victims" of aggravated robbery and robbery under Ohio law. *Id.* at 27-29. The state filed an appellee brief. *Id.* at 37-51.

On April 21, 2020, the Ohio Court of Appeals overruled Hart's assignments of error and affirmed his convictions. *Id.* at 67-83; *State v. Hart*, 2020-Ohio-1640 (Ohio Ct. App. 2020). In overruling Hart's second assignment of error (the merger/Double Jeopardy issue), the court stated:

> **{¶23}** [Hart], in his second assignment of error, contends that the trial court erred in failing to merge the aggravated robbery and robbery counts and their accompanying gun specifications into a single offense of aggravated robbery with a single gun specification.
>
> **{¶24}** Prior to sentencing, defense counsel had argued that the two counts should [merge] because the victim was Circle K and there was only one animus. Appellee had argued that there were two victims namely, the two employees of Circle K.
>
> **{¶25}** R.C. 2941.25, Ohio's allied offense statute, provides:
>
> **{¶26}** (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> **{¶27}** (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
>
> **{¶28}** In *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:
>
> **{¶29}** 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

4

{¶30} 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶31} 3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶32} The *Ruff* court explained at paragraph 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶33} "Separate convictions and sentences are permitted [under R.C. 2941 .25] when a defendant's conduct results in multiple victims." *State v. Allen,* 8th Dist. Cuyahoga No. 97014, 2012-Ohio-1831, ¶ 59, citing *State v. Skaggs,* 2nd Dist. Clark No. 10-CA-26, 2010-Ohio-5390, ¶ 7.

{¶34} In the case sub judice, there were two victims namely, Kara Ward and Tammie Marshall, and different conduct. As noted by appellee, when [Hart] robbed the circle K, he threatened the lives of both woman [sic]. [Hart] threatened each victim with a gun and took money from both of them. We find, therefore, that [Hart's] convictions do not merge even though the offenses were committed by a single transaction because each was committed with a separate animus.

{¶35} [Hart's] second assignment of error is, therefore, overruled.

ECF Doc. 8-1 at 74-76.

On June 4, 2020, Hart appealed to the Ohio Supreme Court. *Id.* at 84-85. Hart's memorandum in support of jurisdiction asserted three propositions of law: (i) "Under R.C. § 2941.25, when an offender commits an aggravated robbery and robbery simultaneously and

5

with a single animus or motivation against a single victim, the offender may be charged with both such offenses, but the offender may only be convicted of one"; (ii) "For purposes of determining whether a single criminal transaction involves a single victim or multiple victims, the determination and designation of a "victim" is governed by the definition of victim in R.C. § 2930.01, and, or Article I, Section 10a of the Ohio Constitution"; and (iii) "The failure of a trial court to merge the sentences of two allied offenses of similar import that are committed against one victim in a single criminal transaction and with a single animus, violates the Double Jeopardy Clause of the United States and Ohio Constitutions." *Id.* at 90. The state filed a memorandum in opposition. *Id.* at 97-106. On August 18, 2020, the Ohio Supreme Court declined to accept jurisdiction of Hart's appeal. *Id.* at 107.

## II. Federal Habeas Petition

Hart filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, which was received and docketed by the Southern District of Ohio on January 13, 2022. ECF Doc. 1. Hart signed and dated the § 2254 petition on December 13, 2021. *Id.* at 14. On January 31, 2022, the Southern District of Ohio transferred this action to the Northern District of Ohio. ECF Doc. 2.

In the instant petition, Hart asserted one claim for relief: "Allied offense – Double Jeopardy." *Id.* at 5. He alleged the following supporting facts:

> On October 31st, 2016 a robbery took place at a Circle K convenience store. The robbery had a time span of 1 minute. There were two cashiers. Both cashiers gave the money out of the resister. Neither was harmed – touched or scathed. After conviction at trial – aggravated robbery and robbery got ran consecutive against me – violating my allied offense and Double Jeopardy rights.

*Id.*

## III. Law and Analysis

### A. Statute of Limitations

6

In his petition, Hart contends that the one-year statute of limitations under 28 U.S.C. § 2244(d) should not bar his petition and this court should provide leniency because: (i) he had been burdened by the COVID-19 pandemic; (ii) he owed court costs exceeding $5,000; (iii) the statute of limitations only lapsed in mid-August 2021; and (iv) the state court's errors were so blatant. ECF Doc. 1 at 13.

Warden Erdos contends that the court should dismiss Hart's § 2254 petition as time-barred under 28 U.S.C. § 2244(d)(1)(A). ECF Doc. 8 at 6-7. Warden Erdos argues that Hart's conviction became "final" under 28 U.S.C. § 2244(d)(1)(A) on November 16, 2020 – the end of the 90-day period within which Hart could have petitioned for a writ of certiorari in the United States Supreme Court. *Id.* at 7. The warden argues that: (i) the statute of limitations began to run the following day on November 17, 2020; (ii) Hart did not file any tolling actions within the one-year period; and (iii) the statute of limitations ran until it expired on November 16, 2021. *Id.* Warden Erdos concludes that the petition is time-barred and must be dismissed because the instant petition was filed on January 13, 2022 – nearly two months after the statute of limitations expired. *Id.*

In his traverse, Hart seemingly argues that the statute of limitations should not bar his habeas petition because: (i) he lacks knowledge of the law and legal procedures; and (ii) he was never notified or made aware of the one-year statute of limitations and the specific deadline to file his habeas petition. ECF Doc. 9 at 1-2. Hart also stated that documents provided with the traverse were irrefutable proof that his rights were violated, and the trial court made clear errors of law. *Id.* at 3. With the traverse, Hart provided a portion of his memorandum in support of jurisdiction that was filed before the Ohio Supreme Court, which argued that the two Circle K employees did not qualify as victims of the aggravated robbery and robbery offenses. *Compare* ECF Doc. 9-1, *with* ECF Doc. 8-1 at 92-96.

7

The Antiterrorism and Effective Death Penalty Act of 1996 has a one-year statute of limitations governing all applications for writs of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The running of the one-year statute of limitations is tolled – or suspended – during the pendency of properly filed motions for post-conviction relief or other collateral proceedings. *Id.* § 2244(d)(2). Under § 2244(d)(1)(A), if the petitioner filed a petition of for writ of certiorari in the United States Supreme Court, his conviction becomes final when the Court affirms the conviction or denies the petition. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). In such cases, the judgment becomes final on the 90th day after entry and the AEDPA limitations period begins running the next day. *See* Fed. R. Civ. P. 6(a); *Bronaugh*, 235 F.3d at 285.

The Ohio Supreme Court declined to accept jurisdiction of Hart's appeal on August 18, 2020. ECF Doc. 8-1 at 107. Thus, Hart had until November 16, 2020 to petition for a writ of certiorari for direct review in the United States Supreme Court. Because Hart did not do so, the AEDPA statute of limitations began to run the next day, November 17, 2020. Hart did not file any applications for state post-conviction relief or other collateral review that could have tolled the expiration of the statute of limitations under 28 U.S.C. § 2244(d)(2). Thus, the statute of

limitations was not tolled and expired a year later on November 17, 2021. Under the prison mailbox rule, the instant 28 U.S.C. § 2254 habeas petition is deemed filed on December 13, 2021[1] – 26 days after the statute of limitations expired. Accordingly, Hart's petition is untimely and due to be dismissed, unless Hart can demonstrate that equitable tolling is warranted, or he raises a claim of his actual innocence.

### B. Statute of Limitations Exceptions

#### 1. Equitable Tolling

Although Hart has not explicitly made an argument for equitable tolling, he has raised several issues that can be construed as an argument for the equitable tolling of the statute of limitations. *See* ECF Docs. 1, 9. Hart asserts that the statute of limitations should not bar his petition because he was "burdened heavily by this global pandemic." ECF Doc. 1 at 13. In his traverse, Hart asks for leniency related to the statute of limitations, arguing that he lacked knowledge of the law and legal procedures, and he was never notified of the statute of limitations timeline and deadline. ECF Doc. 9 at 1-2.

Because AEDPA's statute of limitations is not jurisdictional, it is subject to equitable tolling. *Holland v. Florida*, 560 U.S 631, 645 (2010). If a petitioner seeks equitable tolling, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (quotation marks

---

[1] Under the "prison mailbox rule[,] . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002)). The instant habeas petition does not contain a statement regarding when it was placed in the prison mail system. *See* ECF Doc. 1. However, Hart signed the document on December 13, 2021, *see id.* at 14, making that the earliest day the petition could have been placed in the prison mail system. For purposes of evaluating whether the habeas petition is barred by AEDPA's statute of limitation, the court will consider December 13, 2021 as the filing date under the prison mailbox rule. *See Brand*, 526 F.3d at 925 (providing that, "absent contrary evidence," courts will assume that that a *pro se* prisoner handed over a pleading to prison authorities "on the date he or she signed [it]").

omitted). The diligence required for equitable tolling purposes is "reasonable diligence . . . not maximum diligence." *Id.* at 653 (quotation marks omitted; citations omitted). Specifically, the petitioner must show diligence in filing a federal habeas petition. *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). The second prong of equitable tolling requires both that the circumstance preventing a timely filing be extraordinary and beyond the petitioner's control. *Menominee Indian Tribe v. United States*, 577 U.S. 250, 256-57 (2016).

Although equitable tolling is determined on a case-by-case basis, caselaw provides some useful guideposts. *Keeling*, 673 F.3d at 462. Being diligent in pursuing state post-conviction relief, for example, is no substitute for a lack of diligence in pursuing federal habeas relief. *Vroman*, 346 F.3d at 606. And the Sixth Circuit has made it plain what circumstances are *not* extraordinary. *See, e.g.*, *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751-53 (6th Cir. 2011) (lack of transcripts or the state court record, *pro se* status, and limited law library access); *Keeling*, 673 F.3d at 464 (*pro se* status and ignorance of the law); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (illiteracy and lack of education). Ultimately, courts use equitable tolling sparingly, and it is up to the petitioner to prove he is entitled to it. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Hart has not demonstrated that he diligently pursued the filing of his habeas petition and has not pointed to any factor outside of his control that prevented him from filing a timely petition. *Holland*, 560 U.S. at 649; *see generally* ECF Doc. 1; ECF Docs. 1, 9. Hart provided no description or assertion of diligent efforts that he made to timely file a habeas petition after the Ohio Supreme Court denied jurisdiction to hear his appeal. Moreover, he has failed to identify any extraordinary circumstance that prevented him from submitting a timely petition. First, Hart's main argument for equitable tolling is that he lacked sufficient legal knowledge and was never informed of the statute of limitations deadline. ECF Doc. 9 at 1-3. However, this

argument is unpersuasive, as the Sixth Circuit has consistently held that "[i]nexperience in the law and ignorance of the law are not extraordinary circumstances which warrant equitable tolling." *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005); *see also Hall*, 662 F.3d at 750-51; *Allen*, 366 F.3d 396, 403 (6th Cir. 2004).

Second, Hart's general statements about being burdened by the COVID-19 pandemic do not establish a right to equitable tolling because he offered no explanation as to how the pandemic prevented a timely filing of the instant petition. ECF Doc. 1 at 13. A petitioner who seeks tolling on the basis of COVID-19 must demonstrate and explain why specific circumstances related to the pandemic hindered his or her ability to file a timely habeas petition. *See Pryor v. Erdos*, No. 5:20-cv-2863, 2021 U.S. Dist. LEXIS 176957, at *21 (N.D. Ohio Sept. 17, 2021) (collecting cases) ("[A] petitioner seeking tolling on such a basis must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition."), *certificate of appealability denied*, No. 21-3908, 2022 U.S. App. LEXIS 8729 (6th Cir. Mar. 31, 2022), *cert. denied*, 143 S. Ct. 272 (2022); *Meneese v. Boyd*, No. 3:22-cv-00397, 2022 U.S. Dist. LEXIS 207853, at *4-6 (M.D. Tenn. Nov. 16, 2022) (collecting cases). Additionally, Hart's argument that he was unaware of the statute of limitations deadline belies any assertion that COVID-19 prevented him from timely filing his habeas petition. Thus, Hart's bare assertion that he was burdened by the COVID-19 pandemic has not established a right to equitable tolling. Accordingly, Hart is not entitled to the equitable tolling of the AEDPA statute of limitations.

### 2. Actual Innocence

As an initial matter, Hart has not argued that an actual innocence claim should excuse his failure to file a timely petition. *See* ECF Docs. 1, 9. Thus, Hart has forfeited any such argument. *Wagner v. United States*, 805 F. App'x 354, 360 (6th Cir. 2020) ("A party forfeits arguments

11

'not squarely presented to the district court.' *Thomas M. Cooley Law Sch. V. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014)."); *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[T]he Magistrate Judge Act . . . does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]."). However, even if Hart had raised such an argument, it would still fail on the merits.

There is an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386, (2013). Actual innocence claims must be supported by "new reliable evidence" that demonstrates factual innocence, not merely the legal insufficiency of the conviction. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Hart has not established that he can overcome his untimeliness under the "actual-innocence exception." Hart's single ground for relief is not premised on a claim of actual innocence, but instead asserts an error relating solely to the length of his sentence based on a failure to merge two counts of his conviction. *See* ECF Doc 1. Moreover, Hart has not submitted new, reliable evidence with his § 2254 petition, or with his traverse, showing that he is factually innocent of his underlying convictions. Accordingly, because Hart has not produced any new evidence showing that he is actually innocent, Hart has not met his burden to show that an exception to AEDPA's one-year statute of limitations would permit this court to look past his failure to time a timely petition.

In summation, Hart has not demonstrated that: (i) he filed his habeas petition within the one-year AEDPA statute of limitations; (ii) he is entitled to equitable tolling of the statute of limitations; or that (iii) there is evidence of his actual innocence. Accordingly, I recommend that the Court DISMISS Hart's petition as untimely.

## C. Merits Analysis

Even if Hart's sole claim was not subject to dismissal on statute of limitations grounds, it would nevertheless be subject to denial for lack of merit.

### 1. AEDPA Deference

Because the state court adjudicated Hart's Double Jeopardy claim on the merits, AEDPA permits federal habeas relief only when that decision: (i) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (ii) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d). "Unreasonable" doesn't simply mean that the state court got it wrong. *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022). Only if no "fairminded jurist" could agree with the state court may we grant relief. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The petitioner must show that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### 2. Double Jeopardy Legal Standard

The Double Jeopardy Clause of the Fifth Amendment protects against (among other things) the imposition of multiple punishments for the same offense. *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)); *see also Ohio v. Johnson*, 467 U.S. 493, 498 (1984). This prohibition against multiple punishments protects only against the imposition of sentences that are greater than the state legislature intended. *See Volpe*, 708 F.3d at 696 (citing *Albernaz v. United States*, 450 U.S. 333, 334 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)); *see also White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009). Thus, if the state legislature intended to impose multiple punishments for the same offense, no Fifth Amendment violation has occurred. *Hunter*, 459 U.S. at 366. "When assessing the intent of a

13

state legislature, a federal court is bound by a state court's construction of that state's own statutes." *White*, 586 F.3d at 1031 (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)). Thus, when accessing intent for purposes of double jeopardy analysis, federal courts are bound by a state court's determination that a legislature intended multiple punishments for a single criminal incident. *Lash v. Sheldon*, No. 1:19 CV 1616, 2020 U.S. Dist. LEXIS 217302, at *41 (N.D. Ohio Oct. 20, 2020) (citing *Volpe v. Trim*, 708 F.3d 688, 696-97 (6th Cir. 2013)); *see also White*, 586 F.3d at 1031.

In Ohio, courts apply Ohio Rev. Code § 2941.25 (Ohio's merger/allied offense statute) to determine whether the Ohio legislature intended "cumulative punishments" for certain, multiple offenses. *Volpe*, 708 F.3d at 697. The statute provides:

> (A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25.

The Ohio Supreme Court has interpreted Ohio Rev. Code § 2941.25 and held that "a defendant charged with multiple offenses may be convicted of all the offenses if *any* one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 2015-Ohio-995, 143 Ohio St. 3d 114, 34 N.E.3d 892, 896 (Ohio 2015) (emphasis added). In *Ruff*, the Ohio Supreme Court held that two or more offenses are of dissimilar import when they involve separate victims or inflict separate harms. *Id.* at 898.

14

### 3. Discussion

Even if it had been timely asserted, Hart's Double Jeopardy claim would fail on the merits. In Hart's direct appeal, the Ohio Court of Appeals analyzed and applied the rule in *Ruff* – which interpreted Ohio Rev. Code § 2941.25 – and determined that Hart's convictions for aggravated robbery and robbery were not allied offenses of similar import under § 2941.25, even though they were committed by a single transaction, because the offenses involved separate victims, different conduct, and a separate animus. ECF Doc. 5-1 at 74-76. Thus, the Ohio Court of Appeals determined that the trial court did not err in declining to merge the offenses for sentencing, and Hart could be convicted and sentenced for his offenses separately under Ohio Rev. Code § 2941.25. *See id.* The Ohio Supreme Court did not disturb that interpretation. *Id.* at 107. We are bound by the state appellate court's interpretation of state law and its determination that Hart's offenses were not subject to merger. *Volpe*, 708 F.3d at 697; *Banner*, 886 F.2d at 780; *Lash*, 2020 U.S. Dist. LEXIS 217302, at *43; *see also Jackson v. Smith*, 745 F.3d 206, 214-15 (6th Cir. 2014) ("With the focus correctly on what the Ohio Court of Appeals actually did in this matter—it discerned the Ohio legislature's intent by applying Ohio's allied offenses statute—there can be no doubt that its decision falls outside § 2254(d)(1)'s narrow exceptions to the bar on federal habeas relief, thus rendering Jackson ineligible for relief.").

Thus, we are limited to determining whether the Ohio Court of Appeals' merger decision was based upon an unreasonable determination of the facts in light of the record before it. 28 U.S.C. § 2254(d)(2). For purposes of merger, Ohio courts consider "the entire record, including arguments and information presented at the sentencing hearing." *State v. Washington*, 999 N.E.2d 661, 669 (Ohio 2013). The Ohio Court of Appeals reviewed the record and determined that Hart's convictions did not merge because:

> [T]here were two victims namely, Kara Ward and Tammie Marshall, and different conduct. As noted by [Hart], when [Hart] robbed the circle K, he threatened the

15

>lives of both woman [sic]. [Hart] threatened each victim with a gun and took money from both of them. We find, therefore, that [Hart's] convictions do not merge even though the offenses were committed by a single transaction because each was committed with a separate animus.

ECF Doc. 8-1 at 76. Given the facts of this case, it was not unreasonable for the state court to conclude that Hart's offenses were committed against separate victims. Accordingly, it was not unreasonable for the state court to conclude that Hart's offenses of conviction were of dissimilar import and should not be merged. *See Ruff*, 34 N.E.3d at 896, 898. Thus, I find that the state court's decision did not involve an unreasonable determination of the facts presented. 28 U.S.C. § 2254(d)(2). Under these circumstances, AEDPA requires us to accept the findings of the Ohio courts.

Neither Hart nor the record has demonstrated that the decision by the Ohio courts on the merger issue was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or that the decision was based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings. Because Hart has not made those showings, his claim fail on the merits. Accordingly, even if Hart's claim was not barred by the AEDPA statute of limitations, we would be bound to dismiss it for lack of merit.

**IV.    Certificate of Appealability**

In order to appeal the denial of federal habeas relief, the petitioner must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1). To receive a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Specifically, he must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). And when a claim was denied on

16

procedural grounds, the petitioner "must show that reasonable jurists could disagree about the both the procedural ruling and the underlying constitutional claim." *Winburn v. Nagy*, 956 F.3d 909, 912 (6th Cir. 2020) (citing *Slack*, 529 U.S. at 484).

If the court accepts my recommendation, Hart will not be able to show that the dismissal of his petition as untimely under AEDPA's one-year statute of limitations is debatable among jurists of reason. Hart's deadline to file a timely habeas petition expired on November 17, 2021. He did not file his petition until December 13, 2021. He has not met his burden to show that he is entitled to equitable tolling or presented an actual innocence claim. Because jurists of reason would not find debatable the conclusion that Hart's petition is untimely or that he has not shown that he is entitled to proceed notwithstanding his failure to file a timely petition, I recommend that no COA issue in this case.

## V.     Recommendation

For the foregoing reasons, I recommend that Hart's petition for writ of habeas corpus under 28 U.S.C. § 2254 be DISMISSED as untimely. I further recommend that Hart not be granted a COA.

Dated: November 16, 2023

                                                   Thomas M. Parker
                                                   United States Magistrate Judge

―――――――――――――――――――

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C. § 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).